Appeal from the Circuit Court of the City of St. Louis.
This is a proceeding in mandamus to compel the City Comptroller of the City of St. Louis to pay the relator salary at the rate of $1,800 per annum as an alderman, under the new charter, instead of $300 per annum fixed for members of the House of Delegates by the old charter of said city.
Relator was paid at the rate of $300 per annum — $25 per month — but received it under protest and claimed, at the time, that he was entitled to $1,800 per annum, or $150 per month.
The lower court denied the peremptory writ and dismissed relator's proceeding. He duly perfected his appeal to this court. *Page 500 
The questions involved in this appeal are: (1) which charter, the old or new, prescribes the salary of the relator, after the new charter took effect; (2) whether, if the new, the provision of the Constitution against increasing salaries of municipal officers during their term of office is violated; and (3) whether relator waived or estopped himself from claiming any greater salary by his acceptance under protest of $25 per month.
Relator was a member of the House of Delegates under the old charter at the time the new charter became effective. He was elected April 1, 1913, for a period expiring April 5, 1915. The new charter was adopted June 30, 1914, but did not take effect until sixty days thereafter, or August 29, 1914. Under the old charter the legislative body consisted of the Municipal Assembly, composed of two branches, the Council and House of Delegates. The Council consisted of a president and twelve members all elected by the city at large. The House of Delegates had twenty-eight members, one elected by elected by each ward in the city. Under the new charter, the legislative power is vested in a single body called the Board of Aldermen, composed of twenty-eight members and a president, all elected by the city at large.
Section 8 of the Schedule of the new charter, provides as follows:
"The present Municipal Assembly, with its present officers, or such as the respective houses may lawfully choose, under the present charter, shall continue until the first Monday in April, 1915, with all the powers and duties given to the Board of Aldermen by this charter, and subject to its provisions; and until said date, the provisions of the present charter with regard to the filling of vacancies in the office of Mayor or temporary performance of the duties of Mayor, shall remain in force."
Section 9 of said Schedule was as follows: *Page 501 
Section 9. All terms of office of the present officers or employees, except those terms expressly saved or continued by this charter, are abolished.
By Section 3 of Article 2 of the new charter, the first Board of Alderman elected, after the new charter took effect, was to be elected at the general election to be held on Tuesday, April 6, 1915.
Section 18 of the said Schedule provided that: "Every present city officer, who, if appointed or elected, would be required by this charter to take an official oath, shall take, subscribe and file such oath as provided in this charter."
Section 3 of Article 8 of said new charter provided that: "Every officer . . . shall before entering upon his duties . . . take and subscribe and file with the Register an oath or affirmation that he has all the qualifications and is not subject to any of the disqualifications named in this charter for the office or employment he is about to assume; that he will support . . . the charter and ordinances of the city."
Section 16 of the Schedule of the new charter provides: "All present boards, commissions and officers created by charter or ordinance and not provided for or authorized or expressly continued by this charter are hereby abolished, save only the City-Plan Commission, Board of Engineers and Board of Examiners of Plumbers, which said commission and boards, until abolished by ordinance, shall hereafter be appointed by and under the control of the Board of Public Service."
The powers, duties and qualifications of the members of the Board of Aldermen are materially different from those of either branch of the Municipal Assembly of the old charter. In some respects, such powers and duties are increased and in others taken away.
Section 14 of Article 3 of the old charter provided that each member of the Municipal Assembly should be entitled to a salary of $300 per annum and no more. *Page 502 
Section 2 of Article 4 of the new charter provides that: "The salary of each alderman shall be $1,800 per annum."
I. The Constitution provides, Section 22, Article 9, as to amending the charter of St. Louis, that when a new charter shall be ratified at the election "then said charter shall become the organic law of such city, and sixty days thereafter shall take effect and supersede the charter of such city andEffect of all special laws inconsistent therewith." ByNew Charter. authoritative mandate of the Constitution, therefore, on the 29th day of August, 1914, when the new charter took effect, the old charter was functus officio,
had ceased to exist and no vestige of it remained. It had been entirely superseded by the new charter, which then became the organic law of the city. If thereafter, any of the provisions of the old charter remained in force, it must be because by the terms of the new charter they were continued in force, and thus made a part of the new charter itself. It is not necessary that a provision of the old charter should be inconsistent with the new charter, in order that the new charter should repeal or supersede it. It is so superseded, whether it is inconsistent with the new charter or not, by the express command of the Constitution. To have any life or vitality left in it, any provision of the old charter must be affirmatively made a part of the new. Otherwise, after the taking effect of the new charter, it is automaticallysuperseded by the provisions of the new charter. So that, we must rule that the Municipal Assembly of the old charter, as a dual body composed of a Council and House of Delegates, was swept away by the new charter, unless it was continued as such dual body by the new charter. We can find no provisions to that effect in such new charter. It is true, that Section 8 of the Schedule says: "The present Municipal Assembly with its present officers or such as the respective houses may lawfully choose under thepresent charter, shall continue until the first Monday in April, *Page 503 
1915" — but, continue how? As an assembly with two legislative bodies, with powers, duties and functions of the House of Delegates and the Council, respectively under the old charter? Not at all. But "with all the powers and duties given to theBoard of Aldermen by this charter and subject to itsprovisions." That is, the members of the Assembly continue asone legislative body, not two, and have not the powers and duties prescribed for assemblymen by the the old charter, but have the duties and powers of the Board of Aldermen, given by the new charter, and are subject — that is, governed and controlled by — the provisions of the new and not the old charter. The question is not simply whether the members of the old Assembly were continued in office, but whether they were continued in the same or a different office — a new office or in the old one? There can be no doubt, it seems to us, that the old office of Assemblyman died with the old dual Assembly, and the members of the old Assembly were inducted into the new office of alderman — elected by the people of the city at large, as members of the Board of Aldermen, when they voted to adopt the new charter — and that they were to hold such office until the first Monday in April, 1915, and upon April 6, 1915, their successors should be elected at the general city election to be then held. All the other provisions of the new charter are in harmony with this construction. The old assemblymen were required to take a new oath of office, to have the qualifications of Aldermen prescribed by the new charter, — so that, if any of them failed in this respect, he could not hold the office — and the respective houses — i.e., the members thereof — were authorized only to choose such officers for themselves, as provided by the new charter. There was a complete novation. The old things — so far as the dual assembly of the old charter was concerned — had passed away, and all things had become new — by the new charter.
We hold, therefore, that relator, upon taking effect of the new charter, became an alderman under the new *Page 504 
charter, and was entitled to receive a salary of $1,800 per annum, as therein prescribed, unless forbidden by the Constitution, as contended for by the respondent.
II. The Constitution provides, Section 8, Article 14: "The compensation or fees of no state, county or municipalSalary officer shall be increased during his term of office."Decrease.
In as much as we have held that the office of member of the House of Delegates was abolished by the new charter and that relator, since its adoption and taking effect, has occupied the new office of Alderman — we must rule that this section of the Constitution has no application, because it is not contended that relator's salary, as Alderman, has been increased during his term of office. The creation of a new office, with a higher salary, and the holding thereof by relator, since his election as member of the House of Delegates, which was abolished by the new charter, is not prohibited by the Constitution.
III. Nor did the relator waive his right nor is he estopped to claim the salary due him, by receiving $25 per month from the city. He received this sum under protest and claimed, at the time, that he was entitled to be paid at the rate of $1,800 per year, the salary of an Alderman fixed by the new charter. There was no settlement with relator by the city, as in the case of Galbreath v. Moberly, 80 Mo. 484, nor settlement and compromise, as in the case of McNulty v. Kansas City, 198 S.W. 186, relied on by respondent.
The result is, the case is reversed and remanded, and the lower court is directed to set aside its judgment and decree denying the peremptory writ herein, and to enter a judgment granting a peremptory writ of mandamus, as prayed for by the relator.
Brown and Ragland, CC., concur.